*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *DANA G. HOWES II,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| v. | )   *Civil No. 08-196-B-W* |
| | ) |
| *MICHAEL J. ASTRUE,* | ) |
| *Commissioner of Social Security,* | ) |
| | ) |
| *Defendant* | ) |

*REPORT AND RECOMMENDED DECISION[1]*

This Social Security Disability ("SSD") appeal raises the question whether the commissioner supportably determined that the plaintiff, who alleges disability stemming from asthma, upper/lower extremity disorders, sleep disorder, eczema, and mood disorder, engaged in substantial gainful activity ("SGA") and thus was disqualified from benefits for the period from May 31, 2004, through October 15, 2004, and thereafter was capable of returning to past relevant work or, alternatively, performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on January 16, 2009, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

administrative law judge found, in relevant part, that the plaintiff engaged in SGA during the period from May 31, 2004, his alleged date of onset of disability, through October 15, 2004, Finding 2, Record at 15; there was no continuous 12-month period during which he had not engaged in SGA from October 14, 2003, through October 14, 2004, Finding 3, *id.*; therefore, he was not disabled from May 31, 2004, through October 14, 2004, Finding 4, *id.* at 16; he had severe impairments of asthma, right upper and lower extremity disorders, sleep disorder, and eczema, Finding 6, *id.*; he retained the residual functional capacity ("RFC"), *inter alia*, to concentrate and persist on work at a goal-oriented, non-production line rate, Finding 8, *id.* at 18; he was capable of performing past relevant work as an ambulance driver and a bagger, Finding 9, *id.* at 22; considering his age (31), education (at least high school), work experience, and RFC, he had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy, Findings 10-13, *id.* at 23; and he therefore had not been disabled at any time from May 31, 2004, through the date of decision, November 24, 2006, Finding 14, *id.* at 24. The Appeals Council declined to review the decision, *id.* at 5-8, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

      The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

      The administrative law judge reached Step 5 of the sequential evaluation process, at which

stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's appeal also implicates the administrative law judge's findings at Steps 1, 2, and 4 of the sequential evaluation process. At Step 1, the plaintiff bears the burden of proving that he or she did not engage in SGA during the period in question. *Bell v. Commissioner of Social Sec.*, 105 F.3d 244, 246 (6th Cir. 1996); *see also Field v. Chater*, 920 F. Supp. 240, 241 (D. Me. 1995), *called into doubt on other grounds, Seavey v. Barnhart*, 276 F.3d 1 (1st Cir. 2001). Work is considered "substantial" if it "involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "[W]ork may be substantial even if it is done on a part-time basis or if [a claimant] do[es] less, get[s] paid less, or [has] less responsibility than when [he or she] worked before." *Id*. "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id*. § 404.1572(b). If a claimant is able to work at SGA level, the commissioner will find that he or she is not disabled. *See id.* § 404.1571.

Claimants also bear the burden of proof at Step 2, although it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting

Social Security Ruling 85-28).

At Step 4, the claimant bears the burden of proof of inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff argues that the administrative law judge erred in (i) finding that his work activity from May to October 2004 constituted SGA, (ii) categorizing his former work as an ambulance driver and a bagger as past relevant work despite an absence of evidence that those jobs were performed at the SGA level, (iii) refusing to accord "some weight" to a Department of Veterans Affairs ("VA") disability rating decision, (iv) accepting the testimony of a vocational expert ("VE") that the plaintiff had transferable skills, (v) finding the plaintiff capable of performing four jobs seemingly precluded by the stated limitation to goal-oriented, non-production-line work, (vi) accepting the VE's testimony regarding the job of "gate guard," and (vii) finding the plaintiff's depression non-severe. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 10) at 2-10. I recommend that the court find no error in the Step 1 finding. At oral argument, counsel for the commissioner conceded that the Step 4 finding is unsupported by substantial evidence of record. However, as he pointed out, the error is harmless to the extent the alternative Step 5 finding stands. While further errors were committed, none warrants reversal and remand. Accordingly, I recommend that the decision be affirmed.

## I. Discussion

### A. SGA Finding for Period From May to October 2004

The plaintiff, a Gulf War veteran, served as a food service specialist in the United States Army ("Army") from June 18, 1992, to October 24, 1992, and from January 31, 1996, to May 30, 2004, when he was released from duty on grounds of physical disability. *See* Record at 309, 313, 453. He then became self-employed repairing small engines. *See id*. at 452. He testified at hearing that:

1.  He made probably $2,000 a month engaging in that business, which he took over from his father. *See id*. at 452, 454-55.

2.  The $2,000 figure was gross, not net, revenue. *See id*. at 495.[2]

3.  He worked as much as 50 to 60 hours a week, although his hours varied depending on how much work he had, sometimes totaling only 30 in a week. *See id*. at 498.

4.  He charged $20 per hour for his labor, which was low. *See id*. at 505. The average labor rate in his area for small engine work was $35 to $40 per hour. *See id*.

5.  He ceased engaging in the business in mid-October or mid-November 2004, when the economy slowed down and there was not enough work to sustain it. *See id*. at 455.

6.  After he received notice in December 2004 of an award of VA disability benefits, he was deterred from continuing the small-engine business by fear that he would lose benefits. *See id*. at 455-56, 464-65; *see also id*. at 235.

Social Security regulations outline three tests pursuant to which a self-employed person may be found to have engaged in SGA; income alone is not dispositive "because the amount of income you actually receive may depend on a number of different factors, such as capital investment and

---

[2] The plaintiff's attorney made an offer of proof that the plaintiff's wife, who kept books for the business, would testify that he netted only "a few hundred dollars a month after all of the expenses were taken out." Record at 509; *see also id*. at 503. He also offered to submit the couple's tax return. *See id*. at 509. The plaintiff's wife did not testify, and no tax
*(continued on next page)*

profit-sharing agreements." 20 C.F.R. § 404.1575(a)(2).

Test One provides: "You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business." 20 C.F.R. § 404.1575(a)(2)(i). "If you are not a farm landlord and you operate a business entirely by yourself, any services that you render are significant to the business." *Id.* § 404.1575(b)(1). Income is "substantial" if "countable income," that is, net income minus certain other expenditures such as the value of unpaid help furnished by others and impairment-related work expenses not already deducted in determining net income, either averages more than amounts described in the commissioner's earnings guidelines or averages less but is either comparable to what it was before the claimant became seriously impaired or comparable to that of "unimpaired self-employed persons in [the claimant's] community who are in the same or a similar business as their means of livelihood." *Id.* § 404.1575(c)(1); *see also id.* § 404.1574(b)(2).

For calendar year 2004, countable income was "substantial" if it averaged more than $810 per month. *See* Social Security Administration Program Operation Manual System ("POMS") § DI 10501.015(B) ("Policy – Table 2 – Nonblind Individuals Only"), *available at* https://s044a90.ssa.gov/apps10/.

Pursuant to Test Two: "You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood." 20 C.F.R. § 404.1575(a)(2)(ii).

The administrative law judge found that the plaintiff engaged in SGA during the period in question, reasoning:

---

returns are of record.

> The claimant testified that he worked 50-60 hours per week from May 31, 2004 to October 15, 2004 in self-employment as a small engine repairman at $20 per hour. His work activity . . . involves doing significant physical or mental activities performed for pay or profit (20 CFR 404.1572(a) and (b)). His work was comparable to that of other individuals who engaged in such activity as a means of livelihood. He stopped only because the economy slowed down and/or because of pressure from the Veterans Administration to stop work and not because of his impairments. The record provides no indication that his work was subsidized in any way during that period, that he benefited from unpaid assistance, or that he had impairment related work expenses.

Record at 15.

The plaintiff assails the Test One finding on the ground that, while he may have rendered services significant to the operation of the business, there was insufficient proof that he received any substantial income from it, and the Test Two finding on the ground of lack of record evidence that his work was comparable to that of others engaging in the same business. *See* Statement of Errors at 2-3. He argues that, in any event, the overall Step 1 finding is vulnerable because the administrative law judge failed to consider whether the work activity constituted an "unsuccessful work attempt." *See id.* at 3.

The Test One finding is supportable, as a result of which any error in the alternative Test Two finding is harmless. The plaintiff testified that he worked as much as 50 to 60 hours a week at his business, charging $20 per hour, and made about $2,000 a month. While he indicated that this was gross rather than net income, there is no record evidence of the amount of his net income. His counsel made an offer to prove, via the plaintiff's wife's testimony or copies of tax returns, that the plaintiff's net income averaged only several hundred dollars a month. However, there is no such evidence of record. At this step of the sequential evaluation process, the plaintiff bears the burden of proof. *See, e.g., Palmer v. Barnhart,* 40 Fed. Appx. 278, 282 (7th Cir. 2002) ("claimant bears burden of proving [he or] she was not engaged in substantial gainful activity"); *Bell*, 105 F.3d at 246

("[I]t is plaintiff's burden at step one to rebut the presumption that [he or] she is engaged in substantial gainful activity based on [his or] her earnings. In the present case, plaintiff, who was represented by an attorney at the hearing before the ALJ, failed to show that the income from her illegal activity was not really worth the amount set forth at § 416.974(b)(2)(vii) because it was derived from charity or by dint of heroic efforts or that she did not receive substantial income as defined at 20 C.F.R. § 416.975(c).") (citation omitted). The administrative law judge hence supportably concluded that the plaintiff's income from his engine repair business was substantial.[3]

The administrative law judge evidently did consider whether the plaintiff's work constituted an unsuccessful work attempt, reaching the supportable conclusion that it did not. For self-employment to constitute an unsuccessful work attempt, a claimant "must have stopped working or reduced [his or her] work and earnings below substantial gainful activity because of [his or her] impairment or because of the removal of special conditions which took into account [his or her] impairment and permitted [him or her] to work." 20 C.F.R. § 404.1575(d)(2). The administrative law judge found, and the Record supports, that the plaintiff "stopped only because the economy slowed down and/or because of pressure from the Veterans Administration to stop work and not because of his impairments." Record at 15; *see also id*. at 235, 455, 464-65.

### B. Weight Accorded to VA Disability Decision

The plaintiff next faults the administrative law judge for failing to give "some weight" to his VA disability decision. *See* Statement of Errors at 4-5. I find no error.

This court has held that VA disability decisions are entitled to "some weight" in adjudicating Social Security disability claims. *See, e.g., Pinkham ex rel. Pinkham v. Barnhart*, No. 03-116-B-W,

---

[3] At oral argument, the plaintiff's counsel contended that the offer of proof amounted to proof of his client's net income. However, the administrative law judge did not rule the proffered testimony and tax returns inadmissible. *See* Record at
*(continued on next page)*

2004 WL 413306, at *4 (D. Me. Mar. 3, 2004) (rec. dec., *aff'd* Apr. 5, 2004) ("While a determination by another government agency that a claimant is disabled is not binding on the commissioner, 20 C.F.R. § 404.1504, every federal court of appeals that has considered the issue has held that a determination of disability made by the Veterans' Administration is entitled to some weight in determining a claim for Social Security benefits.") (citing, *inter alia*, *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002)).  Even so, "[b]ecause the VA and SSA criteria for determining disability are not identical, . . . the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey*, 298 F.3d at 1076.

> That is the case here.  The administrative law judge stated:
>
> Although the Veterans Administration has found the claimant to be unemployable, the evidence for their finding is not delineated in the evidence of record and the finding appears inconsistent with their treatment notes of record.  Moreover, their finding was made at a time the claimant was working 50-60 hours per week as a small engine repairman and stopped for reasons unrelated to his impairments.  This inconsistency was not explained in the Veterans Administration documentation of record.  Therefore the undersigned gives little weight to the Veterans Administration finding.

Record at 22.

While the VA decision of record, dated December 15, 2004, and/or the cover letter announcing it, dated December 30, 2004, list the evidence considered and the conditions found to be disabling, they do not explain why the VA considered the plaintiff unable to work as a result of these conditions.  *See id*. at 305-12.  VA treatment notes indicate that he suffered in the main from moderate persistent asthma in good control with medications, *see, e.g., id*. at 149 (note of January 13, 2004), 174 (note of October 21, 2003), sleep apnea brought under control by use of a CPAP

---

509. Thus, from all that appears, the plaintiff was not barred from introducing them.

device, *see, e.g., id*. at 154 (note of January 9, 2004), right knee pain, purportedly constant, although the plaintiff was able to work 50 to 60 hours a week despite it, *see, e.g., id*. at 259-60 (note of October 21, 2004), right shoulder pain that for the most part did not affect the plaintiff's usual daily occupation or activities, *see, e.g., id*. at 260, and, upon his discharge from Army service, depression and family discord as he readjusted to civilian life, *see, e.g., id*. at 236 (note of July 29, 2005), 258 (note of October 28, 2004). The administrative law judge reasonably characterized these findings as apparently inconsistent with the finding of disability from any gainful employment.

Beyond this, the VA decision stated: "The VA form 21-8940 you submitted shows you have a high school education and have not worked since your discharge from service because of your service connected disabilities." *Id*. at 310. However, it made no note of indications in two reports that it purportedly reviewed that, subsequent to the plaintiff's Army discharge, he was working as many as 50 to 60 hours a week repairing engines. *See id*. at 310 (list of evidence reviewed in VA disability determination), 258 (notation in October 28, 2004, report of VA mental-health compensation and pension examination that "since the end of Army service in May 2004, [the plaintiff] has been trying to run a small engine business in his home town, and evidently works part time at this"), 260 (notation in October 21, 2004, report of VA compensation and pension examination that plaintiff "continues to work fifty to sixty hours a week with no apparent difficulty, although he states that the knee is quite sore on occasion"). The administrative law judge correctly observed that the VA decision did not explain the discrepancy.

In the circumstances presented, there was no error in the decision to accord little weight to the VA disability decision.

### C.  Finding on Transferability of Skills

The plaintiff next faults the administrative law judge's reliance on the testimony of a VE that

he had acquired work skills in the use of machines, tools, and equipment. *See* Statement of Errors at 5-6. However, the plaintiff acknowledges that the point of error might be moot. *See id.* at 6 n.5. It is.

At Step 5, the administrative law judge found the plaintiff capable of performing four representative jobs existing in significant numbers in the national economy, namely, those of quality control inspector, Dictionary of Occupational Titles ("DOT") (U.S. Dep't of Labor, 4th ed. rev. 1991) § 573.687-034; assembler, DOT § 780.684-062; gate guard, DOT § 372.667-010; and surveillance monitor, DOT § 379.367-010. *See* Record at 24. In reliance on the VE's testimony, the administrative law judge found that two of those jobs, those of quality control inspector and assembler, had an SVP, or Specific Vocational Preparation, rating of 3, and the remaining two had an SVP rating of 2. *See id.* at 24, 517-18. In fact, as the plaintiff points out, *see* Statement of Errors at 6 n.5, per the DOT, the jobs of quality control inspector and assembler have SVP ratings of 2, *see* DOT §§ 573.687-034, 780.684-062. Jobs with SVP ratings of 2 are deemed unskilled and, thus, can be performed without acquisition of any transferable skills. *See* Appendix C, § II to DOT.[4] Any error in finding that the plaintiff possessed transferable skills accordingly is immaterial.

### D. Asserted Inconsistency Between Stated Limitation and Step 5 Jobs

The plaintiff next contends that, in relying on the VE's testimony, the administrative law judge overlooked a seeming inconsistency between the demands of the four representative jobs that

---

[4] The DOT defines "specific vocational preparation" as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Appendix C, § II to DOT. SVP levels range from 1 (short demonstration only) to 9 (over 10 years). *See id.* A Level 2 SVP is "[a]nything beyond short demonstration up to and including 1 month[.]" *Id.* SVP Levels 1 and 2 correspond to unskilled work. *See* Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 00-4p"), at 245 ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.").

11

he found the plaintiff capable of performing and the plaintiff's stated limitation to working "at a goal-oriented, non-production line rate." Statement of Errors at 6; Finding 8, Record at 18.

With respect to the assembler job, the plaintiff correctly points out that the VE himself testified that the job was inconsistent with a necessity to work at a non-production line rate. *See* Statement of Errors at 6; Record at 518. As counsel for the commissioner conceded at oral argument, the administrative law judge accordingly erred in relying on that job to meet the commissioner's Step 5 burden.

The plaintiff posits that the remaining three jobs are inconsistent with the stated non-production-line limitation because they are described in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") (U.S. Dep't of Labor 1993 ed.), a companion volume to the DOT, as entailing performance of repetitive or short-cycle work. *See* Statement of Errors at 6-7. He argues:

> Certainly the description of a foam fabricator (the job referenced in the DOT number for assembler) suggests strongly that the job involves a production rate of assembly, as a series of discrete tasks. Similarly, the "gate guard" position (whether construed as an airline security representative or a ticket taker . . .) is a form of production work in that it is dependent on servicing a stream of employees, customers or visitors and can, in no way, be individualized in terms of goal direction. Although surveillance system monitor involves primarily the use of the eyes to view television screens (as opposed to hands to assemble objects), it is obvious that the tempo of the job is keyed to rapid and repetitive observations and reporting.

*Id.*[5]

I agree that the DOT and the SCO indicate that the job of quality control inspector is inconsistent with a limitation to a goal-oriented, non-production line rate. That job, like the assembler/foam fabricator job, falls within Work Group 06/Industrial in the SCO's Guide for Occupational Exploration ("GOE"). *See* DOT §§ 573.687-034 (placing quality control inspector job

---

[5] The plaintiff mistakenly described the assembler/foam fabricator job, rather than the job of quality control inspector, as
*(continued on next page)*

in section 06.03.02 of GOE), 780.684-062 (placing assembler job in section 06.04.29 of GOE). The Industrial Work Group is defined as appealing to people with "[a]n interest in repetitive, concrete, organized activities in a factory setting." Appendix A to SCO § 06. "A person can satisfy this interest by working in one of many industries that manufacture goods on a mass production basis. A person may enjoy manual work or using handtools. A person may prefer to operate, take care of, or set up machines; supervise other workers; or inspect, sort, count, or weigh products." *Id*.

In the absence of recognition of, let alone any explanation for, the seeming inconsistency, the administrative law judge erred in relying on the quality control inspector job. *See* Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 00-4p"), at 244 ("When there is an apparent unresolved conflict between VE or VS [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.").[6]

Nonetheless, despite the plaintiff's counsel's best efforts to demonstrate an inconsistency between the remaining two jobs, those of gate guard and surveillance monitor, and the DOT/SCO descriptions, I perceive none. Both of those jobs fall within Work Group 04/Protective in the GOE. *See* DOT §§ 372.667-010, 379.367-010; Appendix A to SCO § 04. The Protective Work Group is defined as appealing to people with "[a]n interest in using authority to protect people and property." Appendix A to SCO § 04. "A person can satisfy this interest by working in law enforcement, fire fighting, and related fields. A person may enjoy mental challenge and intrigue and could investigate crimes or fires. A person may prefer to fight fires and respond to other emergencies or may want

---

one of the three remaining jobs. *See* Statement of Errors at 6-7.
[6] Administrative law judges must identify and obtain a reasonable explanation for conflicts between VE testimony and
*(continued on next page)*

more routine work, such as guarding or patrolling.  A person may have management ability and could seek a leadership position in law enforcement and the protective services." *Id*.  Thus, while these two jobs entail repetitive, short-cycle work, nothing in the SCO GOE description indicates that they entail work at a production-line or factory-type pace.

### E.  Asserted Error in Reliance on Gate Guard Job

The plaintiff next suggests that, given the apparent confusion on the part of both the VE and the administrative law judge about the job of gate guard, the administrative law judge erred in relying on it for purposes of Step 5.  *See* Statement of Errors at 7-8.  I agree.

At the plaintiff's hearing, the VE initially testified that the job of "gate guard" corresponded with DOT § 344.667-010.  *See* Record at 519.  When the plaintiff's counsel challenged this description, pointing out that DOT § 344.667-010 identifies the seemingly different job of ticket taker, the VE substituted a citation to DOT § 372.667.030.  *See id*. at 528-29.  As it happens, section 372.667-030 does describe a job termed "gate guard."  *See* DOT § 372.667-030.  However, whereas the VE described the gate guard job as unskilled, *see* Record at 519, the job listed under this DOT heading is a semi-skilled job, with an SVP rating of 3, *see* DOT § 372.667-030.  To further complicate matters, the administrative law judge ultimately found the plaintiff capable of performing the job of "gate guard" under yet another DOT number, section 372.667-010.  *See* Record at 24.  That DOT number describes a job titled "airline security representative" that has an SVP rating of 2 and entails, *inter alia*, screening passengers and visitors for weapons, explosives, or other forbidden articles.  *See* DOT § 372.667-010.

As the plaintiff argues, "[t]he level of confusion evidenced by [the] VE regarding DOT numbers and job descriptions makes it difficult to know what the ALJ actually intended by his

---

the SCO, as well as conflicts between VE testimony and the DOT.  *See* SSR 00-4p at 243.

14

citation." Statement of Errors at 8. If the administrative law judge meant to cite to the job titled "gate guard," DOT § 372.667-030, he erred in relying on it without eliciting an explanation for the discrepancy between the VE's testimony that the job was unskilled and the DOT description indicating that it is semi-skilled. *See* SSR 00-4p at 244. If he meant to cite to the job titled "airline security representative," DOT § 372.667-010, he erred in relying on it in the absence of testimony by the VE that a person with the plaintiff's characteristics could perform that job. In any event, as the plaintiff observes, it is questionable whether that job still exists in the wake of the takeover of the airport screening function by the federal Transportation Security Administration. *See* Statement of Errors at 7 n.6.

That said, the error is harmless. As discussed above, the plaintiff's challenge to the administrative law judge's reliance on a separate representative job, that of surveillance monitor job, fails.

### F. Step 2 Finding of Non-Severity of Mental Condition

The plaintiff finally argues that the administrative law judge erred in finding his depression non-severe. *See* Statement of Errors at 8-10. This contention is without merit.

The administrative law judge credited the opinions of Disability Determination Services ("DDS") non-examining consultants Brenda Sawyer, Ph.D., and Lewis F. Lester, Ph.D., that the plaintiff's affective disorder was non-severe. *See* Record at 17, 211-24 (Sawyer opinion dated May 12, 2005), 277-90 (Lester opinion dated October 4, 2005). He supportably deemed a finding of non-severity consistent not only with those DDS reports but also with the plaintiff's own testimony at hearing that his mental symptomatology was controlled with medications, *see id*. at 16, 495, and with the assessment of DDS examining consultant Jonathan M. Freedman, Ph.D., based on an April 13, 2005, examination, that the plaintiff was suffering from mild depression that would be further

15

reduced with employment and that he had a global assessment of functioning ("GAF") score of 85, indicating no or minimal symptoms and good functionality in all areas, *see id*. at 16, 210.[7]

He took into consideration, but supportably rejected, a finding of VA treating counselor Donald Carson, LADC, that the plaintiff had a GAF score of 50, insofar as Carson's score might indicate serious limitations in vocational settings, and an opinion of VA examining psychiatrist John Newcomb, M.D., that the plaintiff had moderate impairment of his industrial capacity, correlating with a GAF score of 60. *See id*. at 16-17.[8]

With respect to Carson, as the administrative law judge noted, a counselor is not an "acceptable medical source" for purposes of establishing the existence of a medically determinable impairment. *See, e.g.,* 20 C.F.R. § 404.1513(a) & (d)(1). While, as the plaintiff's counsel pointed out at oral argument, the commissioner has described opinions from such practitioners as "important" and has directed that they "be evaluated on key issues such as impairment severity and functional effects," Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 06-03p"), at 330-31, "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . .

---

[7] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score in the range of 81 to 90 indicates "[a]bsent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members). *Id*. (boldface omitted).

[8] A GAF score in the range of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e .g., no friends, unable to keep a job)." DSM-IV-TR at 34 (boldface omitted). A GAF score in the range of 51 to 60 represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id*. (boldface omitted).

'acceptable medical sources' are the most qualified health care professionals[,]" *id*. at 332 (internal quotation marks omitted).

In any event, as the administrative law judge observed, Carson's treatment notes indicate that the plaintiff's disorder caused difficulties in family relationships and that the focus of the treatment was on relationships rather than on his ability to function in other settings. *See id*. at 16, 386-400. In addition, Carson declined to offer an opinion as to the plaintiff's ability to work. *See id*. at 16, 387.[9]

With respect to Dr. Newcomb, the plaintiff correctly notes that the administrative law judge erroneously indicated that Drs. Sawyer and Lester "found that [Dr. Newcomb's] report was not supportive of a conclusion that the disorder was severe[.]" Record at 17; *see also* Statement of Errors at 8. In fact, Drs. Sawyer and Lester omitted any mention of the Newcomb evaluation. *See* Record at 211-24, 277-90. While this is a troubling error, I find it harmless. The administrative law judge supplied other compelling reasons for discrediting the Newcomb industrial capacity opinion that are supported by substantial evidence of record. These included that "Dr. Newcomb's assessment [was] inconsistent with the fact that the claimant was working 50-60 hours per week at a skilled occupation at the time of the assessment" and that "a later examination by Dr. Freedman indicate[d] that the claimant's condition, if it was as severe as assessed by Dr. Newcomb, improved

---

[9] The plaintiff suggests that the administrative law judge erroneously focused on Carson's declination to provide an opinion as to disability when the issue at Step 2 is not whether a condition is disabling, but whether it has more than a minimal effect on a claimant's capacity to work. *See* Statement of Errors at 9. He asserts that Carson did provide an opinion as to severity, stating that the plaintiff's "problems on return were impairing his ability to work and he was experiencing low self esteem as his ability to work was very different from what he thought he should be able to do." *Id*. (quoting Record at 386). The statement quoted appears to be a summary of the finding of an earlier counselor, Angela McIntosh, LMSW-C, upon commencing treatment of the plaintiff on June 30, 2005, that he reported that "he sometimes feels badly about not working. Worked long hours in military and now often feels like he is going 'stir-crazy.'" Record at 414. This hardly demonstrates that the plaintiff's mental impairment imposed work-related functional restrictions. In any event, Carson did not elucidate the nature of any such restrictions. *See* Record at 386-87. While, as the plaintiff observes, Carson's treatment notes reflected problems with dysphoric mood, low self-esteem, anger, irritability, poor
*(continued on next page)*

17

within 12 months of the alleged date of onset." *Id*. at 17.[10]

For these reasons, I detect no reversible error in the Step 2 finding of non-severity of the plaintiff's mental impairment.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of January, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

___

communication, isolation, and the role of new traumatic experiences, *see* Statement of Errors at 9, those notes described resultant functional restrictions only in family relationships, *see, e.g*., Record at 388-400.

[10] The plaintiff further complains that the administrative law judge erred in stating that the "objective signs" reported by Dr. Newcomb supported "no more than slight limitations in functioning." *See* Statement of Errors at 8. The administrative law judge's characterization strikes me as a fair one. The only functional limitations Dr. Newcomb noted on mental status examination were "some difficulty with concentration" and diminished recent memory. *See* Record at 258. Nonetheless, even assuming *arguendo* that the administrative law judge erred in making that judgment, the error is harmless. As noted above, he supplied other compelling reasons for discrediting Dr. Newcomb's opinion to the extent that it reflected more than slight limitations in work-related functioning.